STATE DISTRIBUTING CORPORATION v. G. E. BOBBITT & ASSOCIATES, INC.

No. 8210SC431

(Filed 7 June 1983)

**Accord and Satisfaction § 1— contract dispute—offer of settlement—acceptance—action for breach of contract properly dismissed**

The trial court properly entered a directed verdict in favor of defendant at the close of the plaintiff's evidence where plaintiff's evidence showed that plaintiff agreed to absolve defendant from further liability in exchange for additional cost-free repairs made to concrete which defendant installed and where there was no allegation nor proof of fraud, mutual mistake, or other legal basis for invalidating the agreement or settlement.

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 2 December 1981 in Superior Court, WAKE County. Heard in the Court of Appeals 9 March 1983.

This suit for breach of contract arose out of the construction of an office and warehouse facility for the plaintiff by the defendant and is based upon allegations that the concrete floor for the facility was defectively installed. The defendant denied the breach and alleged that plaintiff's claim was barred by the statute of limitations and a settlement made between the parties. Upon the trial of the case, a directed verdict was entered in favor of the defendant at the close of the plaintiff's evidence.

*Hatch, Little, Bunn, Jones, Few & Berry, by John B. Ross, for plaintiff appellant.*

*Hunter, Wharton & Howell, by V. Lane Wharton, Jr., for defendant appellee.*

PHILLIPS, Judge.

In directing verdict against the plaintiff, the trial judge ruled that the plaintiff's claim was barred both by the statute of limitations and settlement made between the parties. Since the dismissal of plaintiff's action on the second ground was so clearly justified, it is not necessary to discuss the first.

That differences did develop between the parties about the concrete flooring and defendant's responsibility for it, and that

these differences were compromised and settled in June, 1978, the record leaves no room for doubt.

The evidence showed that in August, 1976, three months after the building was completed, cracks began to appear in the concrete floor and between then and June, 1978, the defendant undertook to repair the floor a number of times without cost to the plaintiff, though only a one-year warranty provision was in the contract. The repairs were largely unavailing and the defective condition of the floor continued to be a problem for both parties. During the long period involved, because of the worsening condition of the floor and the frequent need for repairs, the parties were in touch with each other many times, only a few of which need to be recited here. In December, 1977, defendant wrote the plaintiff as follows:

> We are going to cut out and repair the (3) existing bad places in the concrete floor at no charge to you. After reviewing this situation it is my opinion that the floor, itself is not the real problem. It is evident to me that the equipment being used on the floor is having a detrimental effect on this concrete. I strongly suggest that you place a high-quality polyurethane sealer on the floor in order to combat this rough usage.

In January, 1978, at defendant's suggestion, plaintiff had the floor tested by experts and was advised that the trouble was caused by a failure to properly compact the ground that the floor was poured on, as the contract required. But the defendant, still pointing to the floor's misuse, continued to recommend that plaintiff treat the floor by either applying an epoxy-like coating or by the induction of certain hardening chemicals, and sent plaintiff informative materials about both procedures, which plaintiff discussed with several flooring contractors and obtained prices from them. By letter dated April 3, 1978, plaintiff's counsel notified defendant that their tests showed that the defendant was responsible for the flooring defects, demanded that defendant defray the $6,625,87 cost of repairing 54 square feet of spalled areas of concrete and of sealing the entire floor, and stated that legal action would be taken unless suitable redress was made. Defendant also had the floor tested by experts and advised plaintiff by letter dated May 12, 1978 that their tests showed that the concrete complied with the contract terms.

After further discussions between the parties about the floor, on June 12, 1978, defendant wrote the following letter to plaintiff:

> We agree to make the necessary repairs to the approximately 216 square feet of damaged floor area and 217 lineal feet of joints at no charge to you.
>
> We understand your people will work with ours in scheduling the work in order to cause as little inconvenience as possible.
>
> Further, it is important to note that the damages are a result of wear on the surface, and upon completion of this work you will exonerate us from any liability whatsoever.
>
> You propose to put a new wearing surface on this floor and will maintain it accordingly so that this situation will not occur again.

At the bottom of the letter were the words "Accepted By" and a place for plaintiff to sign if it decided to do so. After considering this proposal, on June 15, 1978, plaintiff's president affixed his signature in the space provided and returned the letter to the defendant, who accomplished the repairs described.

Thus, the plaintiff's own evidence showed, without contradiction, that several months after defendant began contending that it was not responsible for the defective concrete, after plaintiff received expert advice to the contrary, and after plaintiff had counsel demand redress of the defendant, plaintiff agreed to absolve defendant from further liability in exchange for some additional cost-free repairs. Upon receiving the repairs bargained for and there being neither allegation nor proof of fraud, mutual mistake, or other legal basis for invalidating the agreement or settlement, the plaintiff's rights in this matter came to an end under elementary principles of law. Whether the transaction involved is dubbed an accord and satisfaction, or a compromise and settlement, and whether there are any significant differences between the two doctrines, about which legal scholars differ, are immaterial for the purposes of this appeal. Both doctrines are favored by the law, which encourages disputing parties to amicably adjust their differences, and since plaintiff's evidence established that there was a dispute between the parties, an offer was made in satisfaction or settlement, it was accepted in writing,

and the terms were fully performed, plaintiff's case is barred under both doctrines. *See generally*, 1 C.J.S., Accord and Satisfaction (1936); 15A C.J.S., Compromise and Settlement (1967); N.C. Gen. Stat. 1-540; Strong's N.C. Index 3d, Vol. 1, pp. 24-33, Vol. 3, pp. 132-39 (1976); *Prentzas v. Prentzas*, 260 N.C. 101, 131 S.E. 2d 678 (1963); *Moore v. Greene*, 237 N.C. 614, 75 S.E. 2d 649 (1953); *Walker v. Burt*, 182 N.C. 325, 109 S.E. 43 (1921).

Though the defendant had the burden of proving this affirmative defense, since the plaintiff's own evidence fully established it and failed to undermine it in any way approved by the law, it was appropriate for the trial judge to so rule and dismiss the action. *Kelly v. International Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971); *Smith v. Burleson*, 9 N.C. App. 611, 177 S.E. 2d 451 (1970).

The judgment appealed from is therefore

Affirmed.

Judges WELLS and JOHNSON concur.